# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF NORTH CAROLINA
# STATESVILLE DIVISION
# CIVIL ACTION NO. 5:08-CV-131-DCK

| | |
|---|---|
| RAYMOND HANSEN and LOUANN HANSEN, | )<br>)<br>) |
| Plaintiffs, | )<br>) **ORDER** |
| v. | )<br>) |
| FREEDOM MOBILITY, INC., and SUNRISE MEDICAL HHG., INC., | )<br>)<br>) |
| Defendants. | )<br>) |

**THIS MATTER IS BEFORE THE COURT** on "Defendant Freedom Mobility, Inc.'s Motion For Summary Judgment" (Document No. 39); Defendant Freedom Mobility, Inc.'s "Motion For Sanctions" (Document No. 65); and "Defendant Freedom Mobility, Inc.'s Renewed Motion For Summary Judgment" (Document No. 71). The parties have consented to Magistrate Judge jurisdiction pursuant to 28 U.S.C. § 636(c), and these motions are ripe for disposition.

Having carefully considered the record, the papers, and applicable authority, as well as oral arguments at a motion hearing on April 22, 2010, the undersigned will <u>deny as moot</u> Defendant's original motion for summary judgment; grant in part Defendant's motion for sanctions; and grant Defendant's renewed motion for summary judgment.

## I. BACKGROUND

Raymond Hansen and Louann Hansen ("Plaintiffs") filed their "Complaint" (Document No. 1-1) in this action in the Superior Court of Iredell County on September 25, 2008. The Complaint asserts that in September 2004 Plaintiffs went to Defendant Freedom Mobility, Inc. ("Defendant Freedom" or "Freedom") to purchase a new wheelchair. (Document No. 1-1, p.3). Defendant Freedom then took measurements and ordered a wheelchair through Defendant JM Smith

Corporation ("Smith"). Id. A wheelchair was subsequently delivered from Defendant Sunrise Medical HHG, Inc. ("Defendant Sunrise" or "Sunrise"), to Defendant Smith, and then from Defendant Smith to Defendant Freedom, and then finally from Defendant Freedom to Plaintiffs. Id. Plaintiffs allege that the subject wheelchair was not properly designed, tested, manufactured, fitted or pressure tested by any Defendant, and was not a proper fit for Plaintiff Raymond Hansen. (Document No. 1-1, p.4). Plaintiffs contend that Mr. Hansen suffered serious, painful and permanent bodily injuries as a result of the negligent fitting and/or manufacture of his wheelchair. Id.. Plaintiffs' Complaint asserts seven (7) claims for relief against "[o]ne or more defendants," including: negligence, breach of express warranty, breach of implied warranty of merchantability, breach of implied warranty of fitness for particular purpose, fraud, unfair and deceptive trade practices, and punitive damages. (Document No. 1-1, pp.4-9).

Defendant Smith filed a "Notice Of Removal To Federal Court" on November 5, 2008, based on diversity of citizenship and amount in controversy. On December 1, 2009, Defendant Freedom and Defendant Sunrise (together "Defendants") filed their first summary judgment motions. (Document Nos. 36 and 39). Plaintiffs and Defendant Smith filed a "Stipulation Of Voluntary Dismissal With Prejudice Of Defendant JM Smith Corporation..." (Document No. 48) on December 28, 2009.

On April 22, 2010, the undersigned held a status and motions hearing in order for the parties to discuss the status of the case and argue any pending motions. (Document No. 58). As a result of the hearing, the Court denied "Plaintiffs' Notice & Motion For Voluntary Dismissal" (Document No. 45); granted Plaintiffs' "Motion To Dismiss" (Document No. 57) with prejudice all claims against Defendant Smith; and granted Defendant Freedom's "Motion To Compel" (Document No. 63). The undersigned ordered Plaintiffs to respond to discovery requests by May 24, 2010; and then

2

*sua sponte* set the revised deadlines of July 1, 2010 for the completion of all discovery, and July 15, 2010 for the filing and/or renewed filing of any motions. On June 14, 2010, Defendant Freedom filed its "Motion For Sanctions" (Document No. 65), and on July 15, 2010, Defendants Freedom and Sunrise filed renewed motions for summary judgment (Document Nos. 70 and 71).

## II. STANDARDS OF REVIEW

The standard of review here is familiar. Summary judgment "should be rendered if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled judgment as a matter of law." Fed.R.Civ.P. 56(c)(2). A dispute about a material fact is "genuine" only if the evidence is such that a reasonable jury could return a verdict for the non-moving party. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). As this Court has previously explained,

> Defendant as the moving party has the initial burden to show a lack of evidence to support Plaintiff's case. If this showing is made, the burden then shifts to the Plaintiff who must convince the Court that a triable issue does exist. Such an issue will be shown "if the evidence is such that a reasonable jury could return a verdict for the [Plaintiff]."

Boggan v. Bellsouth Telecomms., Inc., 86 F.Supp. 2d 545, 547 (W.D.N.C. 2000) (citations omitted).

The non-moving party opposing summary judgment "may not rest upon the mere allegation or denials of his pleading, but his response ... must set forth specific facts showing there is a genuine issue for trial." Anderson, 477 U.S. at 248. In deciding a motion for summary judgment, the court views the evidence in the light most favorable to the non-moving party, that is, "[t]he evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." Id. at 255.

Regarding the motion for sanctions, Fed.R.Civ.P. 37 informs the Court's review. Specifically, if a motion to compel is granted "the court must, after giving an opportunity to be heard, require the party or deponent whose conduct necessitated the motion, the party or attorney advising that conduct, or both, to pay the movant's reasonable expenses incurred in making he motion, including attorney's fees. Fed.R.Civ.P. 37(a)(5)(A). Also, "[i]f a party or a party's officer, director, or managing agent . . . fails to obey an order to provide or permit discovery, including an order under Rule 26(f), 35, or 37(a), the court where the action is pending may issue further just orders" including the payment of reasonable expenses. Fed.R.Civ.P. 37(b)(2)(A)-(C).

## III. DISCUSSION

After careful consideration of the papers, applicable authority, and the arguments of counsel at a motions hearing, the undersigned finds that Defendant Freedom has shown a lack of evidence supporting Plaintiffs' case, while Plaintiffs have failed to satisfy their resulting burden of convincing the Court that triable issues do exist against Defendant Freedom. Therefore, Defendant Freedom is entitled to judgment as a matter of law. The Court has further determined that sanctions against Plaintiffs are appropriate, as discussed below.

**A. Summary Judgment Motion**

Both Defendant Sunrise and Defendant Freedom contend that they are entitled to summary judgment as to all of Plaintiffs' claims. The undersigned will discuss the claims as applied to Defendant Freedom in turn below.

   **1. <u>Negligence</u>**

Plaintiffs first allege that one or more defendants had a duty, *inter alia*, to design, manufacture and sell, distribute or otherwise place into commerce a product that was not unreasonably dangerous and defective, as well as a duty to properly fit and pressure test the

4

wheelchair sold to Plaintiffs. (Document No. 1-1, p.4). The crux of Plaintiffs' Complaint and subsequent arguments is that Mr. Hansen was not properly measured for the wheelchair he ordered in August 2004; however, Plaintiffs also assert that Plaintiffs' wheelchair "was defective as soon as it left the floor of Sunrise's manufacturing facility." (Document No. 43, p.18).

Plaintiffs have not established direct evidence of an actual defect, through expert testimony or otherwise, to support a claim of negligence against Defendant Sunrise. "In an action to recover for personal injuries resulting from manufacturer's negligence, plaintiff must present evidence which tends to show that the product manufactured was defective at the time it left the defendant-manufacturer's plant, and that the defendant-manufacturer was negligent in its design of the product, in its selection of materials, in its assembly process, or in inspection of the product." Sutton v. Major Products Co., 91 N.C.App. 610, 612 (1988) (citing Cockerham v. Ward, 44 N.C.App. 615, 619, 262 S.E.2d 651, cert. denied, 300 N.C. 195, 269 S.E.2d 622 (1980)). All the evidence indicates that Defendant Sunrise manufactured a wheelchair that met the specifications it was supplied by order on August 17, 2004; and further, that there was no defect in that wheelchair at the time it left Defendant Sunrise's control, on or about August 24, 2004. Based on the foregoing, as discussed in greater detail in a separate Order, the Court will grant Defendant Sunrise's motion for summary judgment.

Defendant Freedom is a retailer of wheelchairs and other durable equipment, and was responsible for filling out the specifications for Plaintiffs' order of the subject wheelchair in August 2004. (Document No. 71-1, p.2). Plaintiffs allege that they "requested the same model of chair plaintiff Ray Hansen was then using, a Quickie GPV manufactured by Sunrise Medical." (Document No. 1-1, p.3). Plaintiffs further allege that the chair manufactured for Mr. Hansen was not a proper fit and that even though Defendant Sunrise "had the proper specifications for the fitting

of a chair for Ray Hansen on file," they "manufactured this chair using significantly different specifications." Id. Plaintiffs thus conclude that Mr. Hansen "suffered serious painful and permanent bodily injuries as a result of the negligent fitting and/or manufacture of his wheelchair." Id. at p.4. Considering the Court's determination that the subject chair was not negligently designed or manufactured, the remaining question is whether Defendant Freedom was somehow negligent in the fitting of the subject chair.

Under North Carolina law, in order to establish a claim for negligence, a plaintiff must show by a preponderance of the evidence that defendant owed a duty of care, defendant's conduct breached that duty, the breach was the actual and proximate cause of plaintiff's injury, and damages resulted from the injury. Pritchard v. United States, 5:04cv204, 2006 WL 3833437 at *3 (W.D.N.C. Dec. 26, 2006) (citing Reynolds v. United States, 805 F.Supp. 336, 340 (W.D.N.C. 1992); Southerland v. Kapp, 59 N.C.App. 94, 95 (1982)).

> Proximate cause is
>
>> a cause which in natural and continuous sequence, unbroken by any new and independent cause, produced the plaintiff's injuries, and without which the injuries would not have occurred, and one from which a person of ordinary prudence could have reasonably foreseen that such a result, or consequences of a generally injurious nature, was probable under all the facts as they existed.

Liller v. Quick Stop Food Mart, Inc., 131 N.C. App. 619, 624 (1998) (citing Hairston v. Alexander Tank & Equipment Co., 310 N.C. 227, 233, 311 S.E.2d 559, 565 (1984)). "The law of negligence requires the plaintiff to prove by a preponderance of the evidence that a defendant's breach of duty caused the plaintiff's injury. . . . In other words the plaintiff must prove the defendant's breach of duty was more likely than not (*i.e.*, probably) the cause of the injury." Shaver v. United States, 319

F.Supp.2d 649, 663 (M.D.N.C. 2004) (quoting Hurley v. United States, 923 F.2d 1091, 1094 (4th Cir. 1991)). "[W]here the exact nature and probable genesis of a particular type of injury involves complicated medical questions far removed from the ordinary experience and knowledge of laymen, only an expert can give competent opinion evidence as to the cause of the injury." Click v. Pilot Freight Carriers, Inc., 300 N.C. 164, 167 (1980) (citing Gillikin v. Burbage, 263 N.C. 317, 325 (1965)).

The undersigned finds that Plaintiffs, in response to Defendant Freedom's motion for summary judgment, have failed to forecast sufficient evidence of a negligence claim. Specifically, Defendant Freedom's evidence indicates that Plaintiffs cannot establish the necessary breach of duty or proximate cause to support their negligence claim.

### a. Breach of Duty of Care

First, it is unclear that Defendant Freedom breached a duty to Plaintiffs. The evidence of record suggests that Defendant Freedom exercised due care in the fitting of the subject wheelchair. Following a call from Mr. Hansen saying he needed a new chair, Freedom Mobility representative Mike Campanale ("Campanale") met with Mr. Hansen at his home. (Document No. 71-3, p.4). Campanale had "[o]n and off, probably twenty years" of experience measuring people for wheel chairs and had received training from various companies, including Pride Mobility. (Document No.72-2, pp.5-6.) Campanale's deposition testimony explains that he gathered information on Mr. Hansen's background and the activities he wanted to be able to do with his chair, took measurements of Mr. Hansen and his old chair, and got the serial number of the old chair which allowed him to "get all the specifics of that chair from the company." (Document No. 71-3, at pp.4-6, 8-9). In conducting his measurements, Campanale noted that Mr. Hansen's size had not "changed significantly from four years earlier when he got his previous wheelchair." Id. at pp.8-9.

7

Specifically, Campanale testified that Mr. Hansen's seating and depth and width needs had not changed and that the frame width, depth, length and style of the chair ordered were identical to the predecessor chair. (Document No. 72-2, p.3-4). Campanale called Defendant Sunrise "to finalize the order form in areas that had been crossed out, and ... to coordinate the parts that I needed to make the chair exactly as he wanted." Id. at p.7. When asked what changed from the old chair to the new chair, Campanale testified "[v]ery, very little." Id. at p.4.

One specification that is not clearly explained in the evidence is the frame height of the chair. The specification form (Document No. 38-3, p.2) and the order confirmation (Document No. 38-5, p.3) show that a "Standard" frame was ordered. The specifications form suggests that a "Tall" frame height had originally been selected but was then crossed out. (Document No. 38-3, p.2). The apparent cancellation of the "Tall" order is accompanied by the initials "R.E.H." on the specification form. Id. Campanale testified that the tall frame was "either not available anymore, or there was some reason it couldn't be ordered." (Document No.72-2, p.4). Nancy Delia has testified that the tall was optional, and "would be an extra charge of $220 that Mr. Hansen declined." (Document No. 40-12, p.8).

Nancy Delia ("Delia") was an operations manager at Freedom Mobility at the time Mr. Hansen purchased the subject chair. (Document No. 40-12, p.18). Delia also testified that "Mr. Hansen insisted - - came in demanding he wanted the same chair that he had. That's what he wanted." Id. at p.102. When asked "[o]ther than – the back – the back seat height and other cosmetic things ... things that do not affect how he sits in the chair ... were there or are there any significant differences in the wheelchair that Freedom Mobility sold to him, the Quickie, and his prior wheel chairs? Delia responded, "[t]he only differences would be in the model. If the model had changed, then the standard changed." Id. at p.103. Campanale reached the same conclusion,

8

"[i]n this case I would have said nothing's changed, everything is the same, and–and ordered the chair in a different color, same chair." (Document No. 72-2, p.8).

Plaintiffs contend that one or more of the Defendants failed to design, test, manufacture, and/or properly fit Mr. Hansen's chair "despite having the proper fitting specifications on file." (Document No. 1-1, p.4). Plaintiffs have argued that had the records of Mr. Hansen's prior wheelchairs been consulted, the two stage-four pressure wounds he sustained would have been avoided. (Document No. 42, p.4). It is clear from the papers that in August 2004 Plaintiffs requested a chair that would be identical to the one he was then using, "Mr. Hansen advised the [Freedom] showroom personnel that he wanted a new Quickie GPV wheelchair exactly like the one he was using." (Document No. 42, p.4).

The evidence in this case is that Defendant Freedom did exactly as Mr. Hansen asked - they consulted prior records and specifications from Defendant Sunrise, took their own measurements to confirm his body had not significantly changed, then ordered him a nearly identical chair. Plaintiffs have not shown any evidence that the minor differences between the subject chair and the prior chair caused Mr. Hansen's injuries, nor have they produced admissible evidence that the subject chair is somehow different from what Mr. Hansen ordered and accepted. Plaintiffs argue that the prior chair ordered in 2000, and the subject chair ordered in 2004, are not the same, and that in fact all five (5) measurements are different between the subject chair and the prior chair ordered in 2000. (Document No. 42-7).

In opposing the renewed motions for summary judgment, Plaintiff filed the first page of the 2000 order confirmation. (Document Nos. 72-2, p.10 and 73-2, p.10). Plaintiffs did not file the second page of the 2000 order confirmation, which comparing the 2004 order confirmation, is where most of the measurements are located. (Document No. 38-5, p.3). What can be compared on the

9

available evidence shows that in both 2000 and 2004, a Quickie GP Wheelchair was ordered with an 18" frame width. (Document Nos. 38-5, p.2 and 73-2, p.10). Therefore, contrary to Plaintiffs assertion that all the measurements are different, their own evidence shows that the frame width was identical. It is undisputed that the colors of the chairs differed – in 2004 Mr. Hansen paid extra for mossy oak camouflage. (Document Nos. 38-3 and 38-5). It is also appears upon review of the complete 2004 order confirmation that fitting a wheelchair involves more than five measurements. (Document No. 38-5).

In addition, Plaintiffs' previous brief opposing summary judgment (Document No. 42) cites a "fit comparison used at mediation." (Document No. 42-7). Instead of demonstrating material differences between the 2000 and 2004 Hansen chairs, when the complete 2004 order confirmation (Document No. 38-5) is compared to Plaintiffs' listing of the 2000 measurements (Document No. 42-7), they are identical. In other words, Plaintiffs' own documents and evidence support Freedom's contention that the subject chair and the prior chair are identical for all practical purposes – as Mr. Hansen requested.

Plaintiffs still contend that Campanale failed to correctly measure Mr. Hansen and further criticize his failure to send Mr. Hansen to a wheelchair assessment clinic. (Document No. 73, p.3). As described above, the evidence indicates that Campanale's measurements in 2004 were correct, and consistent with those taken in 2000. The suggestion that Campanale's failure to refer Mr. Hansen to a wheelchair clinic was negligent is without merit: first, Plaintiffs' expert Stephanie Mahan ("Mahan") testified she could only do a wheelchair evaluation "through a referral by a physician;" and second, Campanale was filling out specifications for a *new* chair, not evaluating an old chair. (Document No. 73-1, p.7). Campanale is not a physician, but Plaintiffs have not

presented evidence that a medical degree is required to fit a person for a wheelchair, or that he otherwise lacked sufficient training to fit customers for a wheelchair.

Plaintiffs have failed to present any admissible evidence such that a reasonable jury could find that Defendant Freedom somehow breached its duty of care to Mr. Hansen. Instead, the evidence of both parties shows that Freedom and Campanale undertook a thorough evaluation of Mr. Hansen's needs and then submitted appropriate specifications for Defendant Smith to order the wheelchair Mr. Hansen requested.

### b. Proximate Cause

Even if the evidence did support a breach of duty by Defendant Freedom, Plaintiffs have failed to adequately show that the proximate cause of Plaintiffs' injuries was the subject wheelchair. In this case, expert testimony is required, and that testimony would need to establish that Freedom's breach of duty "in natural and continuous sequence, unbroken by any new and independent cause, produced the plaintiff's injuries." Liller v. Quick Stop Food Mart, Inc., 131 N.C. App. 619, 624 (1998) (citing Hairston v. Alexander Tank & Equipment Co., 310 N.C. 227, 233, 311 S.E.2d 559, 565 (1984)). "To establish that negligence was a proximate cause of the injury suffered, a plaintiff must establish that the injury would not have occurred but for the defendant's negligence." Shaver, 319 F.Supp.2d at 666 (citing Liller, 131 N.C.App. at 624).

Plaintiffs "have identified both Stephanie Mahan and Gregory Stanford, MD ("Stanford") as experts" who "are prior treating medical providers and fully qualified to provide opinions relative to the cause and origin of Plaintiffs' injuries." (Document No. 73, p.2). Both experts were deposed by Defendants on June 17, 2010. Id. Although the parties characterize Mahan and Stanford's testimony differently, the undersigned finds the record clear that Plaintiffs have not produced, or forecast, expert testimony that Defendant Freedom's alleged negligence, unbroken by any new and

independent cause, was either "a" or "the" "but for" cause of Plaintiffs' injuries. "To establish that negligence is a proximate cause of the loss suffered, the plaintiff must establish that the loss would not have occurred but for the" alleged negligence. Rorrer v. Cooke, 313 N.C. 338, 361 (1985).

Neither Mahan nor Stanford have offered testimony sufficient to show the existence of a genuine issue of fact as to Freedom's alleged negligence being the cause of Plaintiffs' injuries. At most, Plaintiffs' experts have opined that the allegedly misfitted wheelchair was one of several factors that may have contributed to Plaintiffs' injuries. For example, Mahan specifically testified that there were many factors in developing pressure sores:

> Q. You said that there were many factors in, in developing a pressure sore.
> A. Uh-huh.
> Q. Correct?
> A. Yes.
> Q. And in testifying that you can't say whether or not he would have developed this had he had an appropriately fitted chair, you just said there were too many variables. Correct?
> A. Correct.
> Q. What other variables are involved in developing pressure sores in a patient like Mr. Hansen?
> A. Uh, sensation, lack of sensation is a contributing factor, uh, consistency of performing pressure relief is, can contribute to that, skin integrity changes with age, uh, moisture contributes to pressure wounds, so excessive sweating, ....

(Document No. 71-6, p.11). Mahan went on to add that Mr. Hansen was subject to excessive sweating, advancing age, and had not practiced adequate pressure relief. (Document No. 73-1, pp. 30-32). It is also important to note that Plaintiffs' expert concedes that her evaluation of the fit of Mr. Hansen's wheelchair in July 2007, because people change, does not inform her how the wheelchair fit Mr. Hansen in August 2004. (Document No. 73-1, p.34).

Stanford's testimony not only fails to pinpoint the wheelchair as the "but for" cause of Mr. Hansen's injuries, but strongly suggests that the cushion(s) used by Hansen were the cause. Dr. Stanford testified in pertinent part:

> Q. And you believe the wheelchair might have been one of those factors, is that right?
> A. Correct.
> Q. Were there other factors?
> A. When you say wheelchair, are you talking about the wheelchair and the cushion?
> Q. Sure. Now when you say and the cushion, what are you referring to, which cushion are you talking about?
> A. What I'm saying is that the wheelchair might be perfectly fine, it's the cushion that's the problem.
> Q. In Mr. Hansen's case, do you think it was the cushion that was the problem or the wheelchair that was the problem? Or both?
> A. From my assessment, it was the cushion. I know from Ms. Mahan's assessment she thought that there were significant problems with the wheelchair.
> Q. Okay, so from your assessment there was a problem with the cushion that contributed to the pressure sore, is that, that right?
> A. Correct.

(Document No. 71-7, p.8-9).

The "Wheelchair Seating & Positioning Physical Evaluation" filed as an exhibit by Plaintiffs is consistent with their experts' testimony that, while the wheelchair did not properly fit Mr. Hansen in July 2007, there were other factors that may have also contributed to his injuries. (Document No. 42-14). Some of those factors include: (1) Hansen did not use a pressure relieving cushion on lawn mower, ATV, toilet seat, or in car; (2) Hansen instructed to perform "pressure relief" every 15 minutes, and to use a pressure relieving cushion on all seat surfaces; (3) Hansen was instructed to discontinue use of an "extra non medical grade rubber cushion inside and on top of Jay Extreme cushion." (Document No. 42-14, p.3).

Based on the evidence forecast, a reasonable jury could not find that Freedom's alleged negligence in fitting Mr. Hansen for a wheelchair was the cause of his injuries. As noted, one of Plaintiffs' own experts opines that a cushion was the problem; and the other expert concedes that she could not assess whether the wheelchair fit properly in August 2004, only that as the chair fit Mr. Hansen in July 2007, it was likely one of several factors that contributed to his injuries. Defendant Freedom has persuasively argued that a factor "contributing" to an injury is not sufficient to establish the necessary proximate cause for a negligence action. (Document No. 74, pp.2-3).

The undersigned, after careful consideration of all the arguments, concludes that Defendant Freedom has adequately shown a lack of evidence to support Plaintiffs' case, and in response, Plaintiffs have failed to convince the Court that a triable issue does exist. The Court will therefore grant Freedom's motion for summary judgment on the negligence claim. Because the Court finds that Plaintiffs have not satisfactorily forecast evidence of all the elements of a negligence claim against Defendant Freedom, the Court will decline to analyze or express an opinion as to Freedom's additional defenses, including contributory negligence and the statute of limitations.

**2. Remaining Claims**

Defendant Freedom's renewed motion for summary judgment also presents arguments for why it should be granted summary judgment on Plaintiffs' additional claims involving implied warranties, express warranty, unfair and deceptive trade practices, and fraud. (Document No. 71-1, pp. 15-20). Plaintiffs' response to the renewed motion for summary judgment fails to address these additional claims. (Document No. 73). Defendant Freedom argues, and the undersigned agrees, that these claims may now be regarded as undisputed pursuant to Fed.R.Civ.P. 56(e)(2) based on Plaintiffs' failure to address Freedom's assertions as to these claims in their responsive brief. (Document No. 74, p.8-9). The undersigned further notes that Plaintiffs have not sought permission

to file a sur-reply to refute Freedom's argument that these additional claims must be dismissed for failure to respond. Based on the foregoing, and pursuant to Fed.R.Civ.P. 56(e)(3), the undersigned will grant summary judgment for Defendant Freedom on Plaintiffs' remaining claims involving implied warranties, express warranty, unfair and deceptive trade practices, and fraud.

In view of Plaintiffs' failure to adequately present a triable issue of fact as to its previous claims, the request for punitive damages must also fail.

**B. Motion For Sanctions**

Defendant Freedom has also filed a "Motion For Sanctions" (Document No. 65) that is ripe for determination. The basic facts supporting the motion appear to be undisputed.

The original discovery deadline in this case was November 1, 2009. (Document No. 10). On September 30, 2009, Defendant Freedom served discovery requests on Plaintiffs, including interrogatories pursuant to Fed.R.Civ.P. 33, and requests for production of documents pursuant to Fed.R.Civ.P. 34. (Document Nos. 63 and 65). Plaintiffs failed to file timely responses to those requests.

On April 16, 2010, Freedom filed its "Motion To Compel" (Document No. 63) in which it sought an order from the Court compelling Plaintiffs to provide answers to the aforementioned requests and seeking costs and expenses incurred in the motion, including attorney's fees. The undersigned heard arguments on the motion to compel at the motions hearing on April 22, 2010, and issued an order from the bench granting the motion. Although the Court granted the motion to compel, the undersigned finds that the circumstances of this case, particularly as relates to the timing of the motion to compel and Plaintiffs' opportunity to respond, make an award of expenses incurred in making the motion to compel unjust pursuant to Fed.R.Civ.P. 37(a)(5)(A)(iii).

At the motions hearing on April 22, 2010, the undersigned asked Plaintiffs' counsel how much time he needed to respond to the outstanding discovery requests and counsel for Plaintiffs, Mr. Chafin, stated thirty (30) days. Mr. Chafin further stated to the Court "unless it's work-product or attorney/client privilege we'll give it." The Court then allowed Plaintiffs until May 24, 2010 to respond to the discovery requests, and set a revised discovery deadline for the case of July 1, 2010, and a revised motions deadline of July 15, 2010.

On June 14, 2010, Defendant Freedom filed the now pending and verified "Motion For Sanctions" (Document No. 65). In its motion, Freedom alleges that Plaintiffs failed to respond to the discovery requests until on or about May 29, 2010, five (5) days after the deadline set by the Court. (Document No. 65, p.2). In addition, Freedom contends that the untimely discovery responses were "incomplete, unresponsive, evasive and otherwise, improper." Id. Freedom included in its motion for sanctions a list of expenses it alleges it incurred in connection with preparing both the motion to compel and the motion for sanctions. Id.

In their response to the motion for sanctions, filed on June 28, 2010, Plaintiffs argue that they "have removed ALL objections" to the "discovery requests and are working with Defendant's counsel to ensure complete disclosure." (Document No. 68, p.5). Again, this response was filed on June 28, 2010 – more than a month after the revised deadline to produce the discovery, and only three days prior to the revised discovery deadline. Plaintiffs' response offers no explanation, reasonable excuse, or substantial justification for their dilatory conduct, but concludes that sanctions are not appropriate under Fed.R.Civ.P. 33 or 34 because Plaintiffs "are making every effort to comply ... and are withholding nothing." (Document No. 68, p.6).

Plaintiffs' response makes clear that not only did they fail to make timely responses as explicitly ordered by this Court, but that as of at least June 28, 2010, they were still *making efforts*

16

to comply. After months of delay, and a hearing in which Plaintiffs' counsel said he just needed thirty days, Plaintiffs still failed to provide the necessary discovery responses on a timely basis. Furthermore, the evidence is that Defendant's counsel made good faith efforts to obtain discovery without court intervention. Considering the circumstances of this case, there does not appear to be any evidence that an award of expenses related to the sanctions motion would be unjust. The undersigned therefore finds that sanctions against Plaintiffs and their counsel for the reasonable expenses incurred by Defendant Freedom in making its "Motion For Sanctions" (Document No. 65) are appropriate pursuant to Fed.R.Civ.P. 37(b)(2)(A)-(C).

"When awarding attorney's fees, a court must always assess whether the amount requested by the moving party is reasonable. 'The most useful starting point for determining the amount of a reasonable fee is the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate.'" Hospira, Inc. v. Alpha And Omega Transp. Services, Inc., 1:06cv074, 2007 WL 1893212 at *5 (W.D.N.C. June 28, 2007) citing Hensley v. Eckerhart, 461 U.S. 424, 436-37 (1983). In 2007, this Court approved an hourly rate of $225 per hour for lead counsel and $180 per hour for the work of associate counsel. Id. Dividing the expenses listed by Defendant's counsel for work on the motion for sanctions by hourly rates approved by this Court, the undersigned finds that the expenses, including attorney's fees, appear fair and reasonable. Moreover, Plaintiffs' response does not contest the reasonableness of the expenses listed by Defendant Freedom in its verified motion. Therefore, for this failure to obey an order of this Court to provide discovery responses on or before May 24, 2010, the undersigned will award sanctions in the form of reasonable expenses associated with preparing and filing the motion for sanctions to Defendant Freedom.

## IV. CONCLUSION

For the foregoing reasons, the undersigned finds that Plaintiffs have not carried their burden of convincing the Court that triable issues exist against Defendant Freedom, such that a reasonable jury could return a verdict for Plaintiffs. Additionally, the undersigned finds sanctions are appropriate as described above.

**IT IS, THEREFORE, ORDERED** that "Defendant Freedom Mobility, Inc.'s Motion For Summary Judgment" (Document No. 39) is **DENIED AS MOOT**.

**IT IS FURTHER ORDERED** that "Defendant Freedom Mobility, Inc.'s Renewed Motion For Summary Judgment" (Document No. 71) is **GRANTED**.

**IT IS FURTHER ORDERED** that Defendant Freedom Mobility, Inc.'s "Motion For Sanctions" (Document No. 65) is **GRANTED** in part. Counsel for Plaintiffs, Tatum & Atkinson, PLLC, shall submit payment of **$2,287.50** to Counsel for Defendant Freedom, the Law Office of Natalie J. Miller, PLLC, **within thirty (30) days** of the filing of this order.

**SO ORDERED**.

Signed: September 24, 2010

David C. Keesler
United States Magistrate Judge