# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF NORTH CAROLINA
# STATESVILLE DIVISION
# CIVIL ACTION NO. 5:08-CV-131-DCK

| | |
|---|---|
| RAYMOND HANSEN and LOUANN HANSEN, | )<br>)<br>) |
| Plaintiffs, | )<br>) ORDER |
| v. | )<br>) |
| FREEDOM MOBILITY, INC., and SUNRISE MEDICAL HHG., INC., | )<br>)<br>) |
| Defendants. | )<br>) |

**THIS MATTER IS BEFORE THE COURT** on "Defendant Sunrise's Motion For Summary Judgment" (Document No. 36) and "Defendant Sunrise's Renewed Motion For Summary Judgment" (Document No. 70). The parties have consented to Magistrate Judge jurisdiction pursuant to 28 U.S.C. § 636(c), and these motions are ripe for disposition.

Having carefully considered the record, the papers, and applicable authority, the undersigned will <u>deny as moot</u> Defendant Sunrise's original motion for summary judgment and grant Defendant Sunrise's Renewed Motion For Summary Judgment.

## I. BACKGROUND

Raymond Hansen and Louann Hansen ("Plaintiffs") filed their "Complaint" (Document No. 1-1) in this action in the Superior Court of Iredell County on September 25, 2008. The Complaint asserts that in September 2004 Plaintiffs went to Defendant Freedom Mobility, Inc. ("Defendant Freedom") to purchase a new wheelchair. (Document No. 1-1, p.3). A wheelchair was subsequently delivered from Defendant Sunrise Medical HHG, Inc. ("Defendant Sunrise" or "Sunrise") to Defendant Smith, and then from Defendant Smith to Defendant Freedom, and then finally from Defendant Freedom to Plaintiffs. <u>Id.</u> Plaintiffs allege that the subject wheelchair was not properly

designed, tested, manufactured, fitted or pressure tested by any Defendant, and was not a proper fit for Plaintiff Raymond Hansen. (Document No. 1-1, p.4). Plaintiffs contend that Mr. Hansen suffered serious, painful and permanent bodily injuries as a result of the negligent fitting and/or manufacture of his wheelchair. Id. Plaintiffs' Complaint asserts seven (7) claims for relief against "[o]ne or more defendants," including: negligence, breach of express warranty, breach of implied warranty of merchantability, breach of implied warranty of fitness for particular purpose, fraud, unfair and deceptive trade practices, and punitive damages. (Document No. 1-1, pp.4-9).

Defendant JM Smith Corporation ("Defendant Smith") filed a "Notice Of Removal To Federal Court" on November 5, 2008, based on diversity of citizenship and the amount in controversy. On December 1, 2009, Defendant Freedom and Defendant Sunrise (together "Defendants") filed their first summary judgment motions. (Document Nos. 36 and 39). Plaintiffs and Defendant Smith filed a "Stipulation Of Voluntary Dismissal With Prejudice Of Defendant JM Smith Corporation..." (Document No. 48) on December 28, 2009.

On April 22, 2010, the undersigned held a status and motions hearing in order for the parties to discuss the status of the case and argue any pending motions. (Document No. 58). As a result of the hearing, the Court denied "Plaintiffs' Notice & Motion For Voluntary Dismissal" (Document No. 45); granted Plaintiffs' "Motion To Dismiss" (Document No. 57) with prejudice all claims against Defendant Smith; and granted Defendant Freedom's "Motion To Compel" (Document No. 63). The undersigned ordered Plaintiffs to respond to discovery requests by May 24, 2010; and then *sua sponte* set the revised deadlines of July 1, 2010 for the completion of all discovery, and July 15, 2010 for the filing and/or renewed filing of any motions. On June 14, 2010, Defendant Freedom filed its "Motion For Sanctions" (Document No. 65), and on July 15, 2010, Defendants Freedom and Sunrise filed renewed motions for summary judgment (Document Nos. 70 and 71).

## II. STANDARD OF REVIEW

The standard of review here is familiar. Summary judgment "should be rendered if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled judgment as a matter of law." Fed.R.Civ.P. 56(c)(2). A dispute about a material fact is "genuine" only if the evidence is such that a reasonable jury could return a verdict for the non-moving party. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). As this Court has previously explained,

> Defendant as the moving party has the initial burden to show a lack of evidence to support Plaintiff's case. If this showing is made, the burden then shifts to the Plaintiff who must convince the Court that a triable issue does exist. Such an issue will be shown "if the evidence is such that a reasonable jury could return a verdict for the [Plaintiff]."

Boggan v. Bellsouth Telecomms., Inc., 86 F.Supp. 2d 545, 547 (W.D.N.C. 2000) (citations omitted).

The non-moving party opposing summary judgment "may not rest upon the mere allegation or denials of his pleading, but his response ... must set forth specific facts showing there is a genuine issue for trial." Anderson, 477 U.S. at 248. In deciding a motion for summary judgment, the court views the evidence in the light most favorable to the non-moving party, that is, "[t]he evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." Id. at 255.

## III. DISCUSSION

After careful consideration of the papers and applicable authority, the undersigned finds that Defendant Sunrise has shown a lack of evidence supporting Plaintiffs' case, while Plaintiffs have failed to satisfy their resulting burden of convincing the Court that triable issues do exist against

3

Defendant Sunrise. Therefore, Defendant Sunrise is entitled to judgment as a matter of law. The undersigned will discuss the claims in turn below.

**A. Negligence**

Plaintiffs first allege that one or more defendants had a duty, *inter alia*, to design, manufacture and sell, distribute or otherwise place into commerce a product that was not unreasonably dangerous and defective, as well as a duty to properly fit and pressure test the wheelchair sold to Plaintiffs. (Document No. 1-1, p.4). The crux of Plaintiffs' Complaint and subsequent arguments is that Mr. Hansen was not properly measured for the wheelchair he ordered in August 2004; however, Plaintiffs also assert that Plaintiffs' wheelchair "was defective as soon as it left the floor of Sunrise's manufacturing facility." (Document No. 43, p.18).

Defendant Sunrise avers, and there has been no persuasive argument refuting, that Defendant Sunrise does not measure or otherwise "fit" end users of the wheelchairs it manufactures. (Document No. 38, p.2). Moreover, it is undisputed that Defendant Sunrise manufactured the wheelchair in question exactly in accordance with Defendant Smith's order, which was exactly as specified by Defendant Freedom, which specifications were approved and initialed by Mr. Hansen. (Document No. 38, p.2-3; Document No. 38-3). Defendant Sunrise argues that Plaintiffs' case is based solely on the contention that Mr. Hansen was not properly measured for the wheelchair he ordered in August 2004, and that it is undisputed that Sunrise had nothing to do with the measurement or fitting of Mr. Hansen's chair. (Document No. 38, p.11) Defendant Sunrise argues that as a result of the foregoing, there is no evidence supporting Plaintiffs' claims against it, and therefore, summary judgment is appropriate. Id.

This Court has recently noted that

> Under North Carolina products liability law, a manufacturer has a duty to use reasonable care to ensure that a product is designed and manufactured without any potentially dangerous defects. Red Hill Hosiery Mill, Inc. v. MagneTek, Inc., 138 N.C.App. 70, 75, 530 S.E.2d 321, 326, rev. denied, 353 N.C. 268, 546 S.E.2d 112 (2000). To sustain a products liability claim based on a theory of negligence, a plaintiff must prove that "(1) the product was defective at the time it left the control of the defendant, (2) the defect was the result of defendant's negligence, and (3) the defect proximately caused the plaintiff's damage." Id.
>
> In proving these elements, a plaintiff is allowed to use certain inferences. For example, direct evidence of an actual defect in the product may give rise to an inference of negligence on the part of the manufacturer. Id. Direct evidence of a defect may be established through expert testimony. See id. Absent direct evidence of an actual defect, "a product defect may be inferred from evidence of the product's malfunction, if there is evidence the product had been put to its ordinary use." Id. at 76-77, 530 S.E.2d at 327. The North Carolina Supreme Court has cautioned that "[i]t is not, however, permissible to infer manufacturer negligence from a product defect which has been inferred from a product malfunction." Id. at 77 n. 7, 530 S.E.2d at 327 n. 7. "In other words, a plaintiff may not prove negligence by stacking inference upon inference. Negligence may not be inferred without actual evidence of a defect." Carlton v. Goodyear Tire & Rubber Co., 413 F.Supp.2d 583, 588 (M.D.N.C. 2005).

Snoznik v. Jeld-Wen, Inc., 1:09cv42-MR, 2010 WL 1924483 at *21-22 (W.D.N.C. May 12, 2010).

In the instant case, Plaintiffs have not established direct evidence of an actual defect, through expert testimony or otherwise, to support a claim of negligence against Defendant Sunrise. "In an action to recover for personal injuries resulting from manufacturer's negligence, Plaintiff must present evidence which tends to show that the product manufactured was defective at the time it left the defendant-manufacturer's plant, and that the defendant-manufacturer was negligent in its design of the product, in its selection of materials, in its assembly process, or in inspection of the product." Sutton v. Major Products Co., 91 N.C.App. 610, 612 (1988) citing Cockerham v. Ward, 44 N.C.App. 615, 619, 262 S.E.2d 651, cert. denied, 300 N.C. 195, 269 S.E.2d 622 (1980). Summary judgment

5

is properly allowed where Plaintiffs have "failed to forecast evidence of a defect in the product in existence at the time the product left [Defendant's] plant." Id. at 612-613.

Here, Plaintiffs primarily attempt to pin a negligence claim on Defendant Sunrise by arguing that because it had previously produced chairs that Mr. Hansen used, it knew or should have known that the subject chair was materially different from the previous chair(s) Mr. Hansen had purchased. (Document No. 43, p.10). Plaintiffs' argument defies logic, and the forecasted evidence.

Even accepting that records of Mr. Hansen's previous chairs were accessible by Defendant Sunrise, and further accepting that Defendant Freedom contacted Defendant Sunrise to compare that information, it is undisputed that the August 17, 2004 order for a wheelchair for Mr. Hansen was submitted by Defendant Smith and made no reference to Plaintiffs, Defendant Freedom, or any information regarding previous chairs used by Mr. Hansen. (Document No. 38-5). As described in the affidavit of JM Smith Corporation employee Jennifer Collins Blackston, Defendant Smith ordered the subject wheelchair from Defendant Sunrise based on specifications provided to Blackston by Defendant Freedom. (Document No. 37). Plaintiffs have failed to establish how Defendant Sunrise was supposed to know the wheelchair ordered on August 17, 2004 was based on a sale by Defendant Freedom, or that the requested wheelchair was for Mr. Raymond Hansen, who happened to be a previous recipient of wheelchairs manufactured by Defendant Sunrise. Contrary to Plaintiffs' most recent arguments, nothing in the testimony of Christine Shimono, product manager for Defendant Sunrise, or Mike Campanale, former employee of Defendant Freedom, controverts Defendant Sunrise's position that it did not know, nor should it have known, that the wheelchair ordered by Defendant Smith was for Mr. Hansen. (Document No. 72). Defendant Sunrise persuasively concludes that "[i]t strains credulity, ... to assert that an inquiry to an unknown, unidentified person at Sunrise, about a prior wheelchair, based only on a serial number, somehow

6

should result in the manufacture of a wheelchair with those same specifications, instead of the specifications set forth on an order form submitted by an authorized dealer in the normal course of business." (Document No. 75, p.4).

All the evidence indicates that Defendant Sunrise manufactured a wheelchair that met the specifications it was supplied by order on August 17, 2004, and further, that there was no defect in that wheelchair at the time it left Defendant Sunrise's control on or about August 24, 2004. By failing to establish evidence that the wheelchair was defective at the time it left Sunrise's control, Plaintiffs cannot sustain their claims under a theory of negligence. Furthermore, Plaintiffs have cited no authority for their position that Defendant Sunrise had a duty to ensure the wheelchair they manufactured properly fit the end user.

The undersigned finds that Plaintiffs have failed to set forth specific facts to convince the Court that a triable issue of negligence exists against Defendant Sunrise such that a reasonable jury could return a verdict in Plaintiffs' favor. Because the Court finds that Plaintiffs have not satisfied the required elements of a products liability claim based on negligence, the Court will decline to analyze or express an opinion as to Defendant's additional defenses, including contributory negligence and the statute of limitations.

## B. Breach Of Express Warranty

In their second claim for relief, Plaintiffs' allege in pertinent part that

> one or more defendants expressly warranted the plaintiff, through sales and other documents, manuals, advertisement and oral representation that the Quickie wheelchair was safe for its intended use, was not unreasonably dangerous for its intended purpose of merchantable quality, was safe and reliable, of superior quality and had been properly fitted and pressure tested for a person of Ray Hansen's build.

(Document No. 1-1, p.6).

7

Defendant Sunrise originally moved for summary judgment as to this claim on December 1, 2009, and then again in its renewed motion on July 15, 2010. Defendant Sunrise contends that it provided a limited warranty and properly excluded all other warranties, written or oral, express or implied. (Document No. 38, p.7). Defendant Sunrise further contends that contrary to the applicable language of the Complaint, it never provided Plaintiffs with an express warranty via sales or other documents, or advertisements, and never made any oral representation to Plaintiffs. Id. Thus, Defendant contends that the only express warranty Plaintiffs could rely on was in the Quickie GP/GPV User Instruction Manual and Warranty ("Manual") (Document No. 38-10, p.24) covering the frame, quick release axles and Sunrise-made parts and components as free from "defects in materials and workmanship." Id. at pp.7-8. Mr. Hansen indicated in deposition testimony that he had seen the Manual. (Document No. 38-1, p.4). Defendant Sunrise argues that the warranty provided for repair and replacement of covered parts as the exclusive remedy. Because Plaintiffs have never alleged a defect in their wheelchair's materials or workmanship, or presented any evidence of such, Sunrise argues that it is entitled to summary judgment. Id. at p.8.

Plaintiffs' response to Sunrise's arguments is brief and unpersuasive. Plaintiffs allege that "Freedom Mobility contacted Sunrise in order to obtain measurements used for Mr. Hansen's prior chairs, presumably to make sure the chairs were exact. ...This promise of an identical chair creates an express warranty as a matter of law." (Document No. 43, p.11).

Even if one construes Defendant Freedom's communication with Sunrise as an effort "to make sure the chairs were exact," and one further accepts that such effort equates with an express warranty of an identical chair, Plaintiffs' claim as to Sunrise fails. Whatever representation Defendant Freedom made to Plaintiffs does not result in an express warranty by Sunrise. It is undisputed that Plaintiffs never had any communications with Sunrise. An express warranty is

8

created by "[a]ny affirmation of fact or promise made by the seller to the buyer which relates to the goods and becomes part of the basis of the bargain...." N.C.Gen.Stat. § 25-2-313(1)(a).

In the instant case, Sunrise's express warranty is limited to defects in materials in workmanship. Plaintiffs' claims do not appear to relate to the warranty provided by Sunrise, and Plaintiffs have failed to present adequate evidence of any other express warranty by Sunrise. Summary judgment is therefore appropriate on this claim.

## C. Breach Of Implied Warranties

Plaintiffs' third and fourth claims for relief allege breach of implied warranty of merchantability and breach of implied warranty of fitness for a particular purpose, pursuant to N.C.Gen.Stat. §§ 25-2-324 and 25-2-315. (Document No. 1-1, p.6-7). The Complaint alleges that the subject wheelchair was not suited for its intended, normal, or particular purposes and was not merchantable. Id.

Defendant Sunrise contends that it properly disclaimed any implied warranty of merchantability or fitness for a particular purpose in its Manual. (Document No. 38, pp.5-7). The Manual provides in pertinent part, under the heading XIII. Sunrise Limited Warranty:

### F. NOTICE TO CONSUMER

1. If allowed by law, this warranty is in place of any other warranty (written or oral, express or implied, including a warranty of merchantability, or fitness for a particular purpose.

2. This warranty gives you certain legal rights. You may also have other rights that vary from state to state.

(Document No. 38-10, p.24).

In support of its disclaimer and summary judgment motion, Defendant Sunrise contends that its warranty and disclaimer are consistent with North Carolina law, which provides

9

> to exclude or modify the implied warranty of merchantability or any part of it the language must mention merchantability and in case of a writing must be conspicuous, and to exclude or modify any implied warranty of fitness the exclusion must be by a writing and conspicuous. Language to exclude all implied warranties of fitness is sufficient if it states, for example, that "There are no warranties which extend beyond the description on the face hereof."

N.C.Gen.Stat. § 25-2-316(2). For additional support, Sunrise points the Court to N.C.Gen.Stat. § 25-1-201(10), which states that whether a term is conspicuous is a decision for the court, but would include "[a] heading in capitals equal to or greater in size than the surrounding text, or in contrasting type, font, or color to the surrounding text of the same or lesser size."

Plaintiffs argues that Sunrise's disclaimer fails as a matter of law because the wheelchair was defective at the moment it was produced. (Document No. 43, p.8). The undersigned respectfully disagrees. As noted above, Plaintiffs have failed to provide sufficient evidence of a defect in manufacturing.

Next, Plaintiffs suggest that Sunrise's disclaimer in its Manual fails as a matter of law based on oral representations made to Mr. Hansen. (Document No. 43, p.11). Also as previously noted, Plaintiffs have failed to produce evidence of any communication between themselves and Sunrise.

Finally, Plaintiffs seem to allege that the Sunrise disclaimer is invalid, and/or Sunrise was negligent, because it purportedly failed to comply, pursuant to regulations of the FDA, with "an affirmative duty to ensure that vendors of its wheelchairs had the knowledge and training to provide accurate measurements of persons which would then be utilized in manufacturing a wheelchair." (Document No. 43, pp. 8-9). This argument relies on the testimony of Plaintiffs' liability expert, who Plaintiffs admit acknowledged that there was no contractual privity between Sunrise and Defendant Freedom. Id. Plaintiffs argue that the fact that Defendant "Smith actually placed this order is of no importance." (Document No. 43, p.9). The undersigned disagrees. The evidence does

not support Plaintiffs' claim that "Sunrise knew, or should have known, that a non-approved vendor was placing an order."  Id.  Furthermore, Plaintiffs do not offer any authority supporting a contention that Sunrise's duties concerning its vendors moots an otherwise effective disclaimer of warranty.

Based on the foregoing, the undersigned finds that Defendant Sunrise's disclaimer is consistent with North Carolina law.  See (Document No. 38-10, p.24); see also Bentley Machinery, Inc. v. Pons Hosiery, Inc., 33 N.C.App. 482, 486 (1977)("in light of G.S. 25-2-316(2), we are of the opinion that the contract excluded any implied warranty of merchantability and fitness for a particular purpose, and that the only warranty made by the plaintiff was the exclusive express warranty that the machines were free from defects in materials and workmanship"); Bulliner v. Gen. Motors Corp., 54 F.R.D. 479, 483 (E.D.N.C. 1971); ACE Inc. v. Maynard, 108 N.C.App. 241, 249 (1992).

**D. Fraud**

Plaintiffs have abandoned the claim of fraud against Defendant Sunrise. (Document No. 43, p.13).

**E. Unfair And Deceptive Trade Practices**

Plaintiffs have also abandoned their claim of unfair and deceptive trade practices against Defendant Sunrise.  (Document No. 43, p.13).

**F. Punitive Damages**

In view of Plaintiffs' failure to adequately present a triable issue of fact as to its previous claims, the request for punitive damages must also fail.

## IV.  CONCLUSION

For the foregoing reasons, the undersigned finds that Plaintiffs have not carried their burden of convincing the Court that triable issues exist against Defendant Sunrise, such that a reasonable jury could return a verdict for Plaintiffs.

**IT IS, THEREFORE, ORDERED** that "Defendant Sunrise's Motion For Summary Judgment" (Document No. 36) is **DENIED AS MOOT**.

**IT IS FURTHER ORDERED** "Defendant Sunrise's Renewed Motion For Summary Judgment" (Document No. 70) is **GRANTED**.

**SO ORDERED**.

Signed: September 24, 2010

David C. Keesler
United States Magistrate Judge